# UNITED STATES DISTRICT COURT

FILED

for the

Eastern District of California

FEB 11 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.   5:15-mj-00011-JLT |
| | ) |
| GUILLERMO MAGALLANES AKA MEMO AKA | ) |
| DREAMER and JUAN LASCANO Jr., | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____11/1/2014 to 2/6/15_____ in the county of _____Kern and elsewhere_____ in the

_____Eastern_____ District of _____California_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 United States Code Sections 846 and 841(a) | Conspiracy to distribute and possess with intent to distribute controlled methamphetamine a Scheduled II controlled substance. |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

SA Chris Grimm DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   2/11/15

_____
*Judge's signature*

City and state:   Bakersfield, CA

Jennifer L. Thurston, U.S. Magistrate Judge
*Printed name and title*

1

2

3                    <u>AFFIDAVIT IN SUPPORT OF CRIMINAL</u>

4                    <u>COMPLAINT AND ARREST WARRANTS</u>

5        I, Christopher M. Grimm, being duly sworn, hereby state and depose:

6        A.    <u>Affiant's Credentials.</u>

7        1.   I am an "investigative or law enforcement officer" of the United States within the

8    meaning of 18 U.S.C.§ 2510(7), in that I am an officer of the United States empowered by

9    law to conduct criminal investigations and make arrests for offenses enumerated in Title 18

10   U.S.C. § 2516.  I am, and have been, a Special Agent of the United States Department of

11   Justice, Drug Enforcement Administration (DEA) since January, 2011.  I attended basic agent

12   training at the Justice Training Center, Quantico, Virginia.  During training, I received more than

13   300 hours of training in drug use and physiology, methods of manufacture, importation,

14   transportation, distribution, and sales of controlled substances.  In January, 2011, I was

15   assigned to the DEA Bakersfield Resident Office (BRO).  Prior to my employment with DEA,

16   I was employed with the St. Louis County Police Department from January, 2004, to

17   September, 2010.

18       2.    During my career, I have conducted or participated in controlled substance

19   investigations, including conspiracies to distribute controlled substances (21 U.S.C. § 846) and

20   the manufacture and possession of controlled substances with the intent to distribute (21 U.S.C.

21   § 841).  These investigations targeted large scale drug trafficking organizations engaged in the

22   sale, manufacture, importation, and distribution of heroin, methamphetamine, marijuana,

23   cocaine, and other controlled substances.  During the course of my work, I have had the

24   opportunity to converse with numerous law enforcement officers, informants, as well as admitted

25   and known drug traffickers as to the methods, regarding the manufacture, importation,

26   transportation, distribution and sales of controlled substances, as well as the methods used to

27   conceal, transport, and launder cash and/or other types of drug proceeds.  I have become

28

1  knowledgeable in the methods used by drug traffickers to import, conceal, transport, distribute,

2  manufacture, and sell controlled substances, as well as their methods used to conceal,

3  transport, and launder cash and/or other types of drug proceeds.   I have been the affiant on

4  federal and state affidavits, and have testified both in state and federal court in the area of

5  narcotics.

6                                                        I.

7                                   NATURE OF AFFIDAVIT

8          3.   This affidavit is submitted to support a complaint charging Guillermo MAGALLANES

9  AKA MEMO AKA DREAMER (DOB 06/02/1978), and Juan LASCANO Jr. (DOB

10  02/25/1982), with knowingly and intentionally possessing with intent to distribute crystal

11  methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1)

12  and 841(b)(1).   This affidavit does not purport to contain all the facts related to this

13  investigation, but only those facts necessary to establish probable cause with respect to the

14  aforementioned offense.

15                                                       II.

16                            STATEMENT OF PROBABLE CAUSE

17          4 In November 2014, an investigation was begun by the Bakersfield Narcotics Unit and

18  the Bakersfield DEA Resident Office into the drug activity of Guillermo MAGALLANES. During

19  this investigation a Bakersfield Police Department Confidential Source, hereafter referred to as

20  CS, working for monetary consideration, advised Detective Nathan Anderberg that the CS was

21  aware of a supplier of crystal methamphetamine residing in the Bakersfield area by the name

22  of Guillermo MAGALLANES, AKA "Memo." It should be noted that MAGALLANES was

23  previously known to the Bakersfield DEA office after being intercepted on a Kern County state

24  authorized T-III June and July of 2014. During the authorized interception period MAGALLANES

25  was intercepted ordering, "Big Ones" (suspected to be pound quantities of methamphetamine),

26  from a target subject that was later federally indicted on narcotics charges. MAGALLANES has

27

28

2

1 also had numerous contacts with law enforcement including over twenty arrests and multiple

2 felony convictions. MAGALLANES is also a documented Mexican Mafia Gang member. Det.

3 Anderberg indicated that the CS provided information that MAGALLANES utilizes couriers and

4 multiple stash house locations to operate is Drug Trafficking Organization and to avoid detection

5 by law enforcement.

6   5. On November 11, 2014, Det. Anderberg and other law enforcement officers were

7 conducting surveillance of MAGALLANES when they observed him meet with Erian Aaron

8 ARAMBULA (DOB 02-09-1991) at ARABMULA's primary residence located at 906 Joplin

9 Court Bakersfield, CA.  Detectives then observed a Toyota Tacoma registered to

10 MAGALLANES leave 906 Joplin Ct. and travel to a trailer unit with an address of 4401 Hughes

11 Ln. # 56, Bakersfield,CA . Once at this location the Tacoma parked directly behind a white

12 Lexus four door sedan, which was registered to Margarita SALCEDO of 5611 Summer Solstice,

13 Bakersfield, CA.  Investigation has determined that Summer Solstice is the girlfriend of

14 MAGALLANES.  Detectives observed MAGALLANES exit the Tacoma and enter the trailer.

15 The two vehicles remained at this location throughout the late night hours of November 11, 2014,

16 and early into the morning hours of November 12, 2014, The CS provided information to Det.

17 Anderberg that Erian Aaron ARAMBULA (DOB02-09-1991) was a narcotics courier for

18 MAGALLANES..

19   6. Det. Anderberg obtained a state authorized warrant to place a tracking device on the

20 vehicle operated by ARAMBULA. During this authorized time period surveillance conducted by

21 Det. Anderberg and other Detectives from the Bakersfield Narcotics Unit observed ARAMBULA

22 visit the residence located at 5611 Summer Solstice. It should be noted that multiple

23 surveillances, data base checks, and vehicle registrations have determined that this is the

24 primary residence of MAGALLANES and SALCEDO.  During the course of surveillance,

25 Det. Anderberg and other Detectives from the Bakersfield Narcotics Unit observed

26 MAGALLANES and ARAMBULA meet at the trailer, 4401 Hughes Ln. #56 Bakersfield, CA.

27

3

28

1    According to information provided by the CS to Det. Anderberg the trailer is a possible stash
2    location for narcotics and money for MAGALLANES. The CS also indicated that MAGALLANES
3    operates several of these types of locations at any one time to avoid and deter detection by
4    law enforcement.   In December of 2014, ARAMBULA was subsequently arrested on an active
5    felony narcotics warrant for violations of California Health and Safety Law 11378.

6         7.   In January 2015, Det. Anderberg advised SA Grimm that he learned from the CS
7    that following the arrest of ARAMBULA, MAGALLANES began utilizing a new courier by the
8    name of Juan LASCANO Jr. to make deliveries of narcotics and to avoid law enforcement
9    detection. The CS advised that MAGALLANES operated a brown colored Tacoma, as well as,
10   a light colored blue Acura TL with paper plates. The CS stated that the LASCANO Jr. operated
11   a silver Kia four door vehicle. Numerous surveillances conducted by Det. Anderberg and
12   Detectives from the Bakersfield Police Department Narcotics unit confirmed that LASCANO Jr.
13   was operating a silver Kia with a California License plate of 5YTT811, registered to a Donna
14   Salazar at 528 S. Indiana St. Porterville, CA 93257.

15        8.   Beginning in late January and early February 2015, Det. Anderberg and additional
16   Detectives from the Bakersfield narcotics unit began conducting surveillances of MAGALLANES
17   and LASCANO Jr.   On February 3, 2015, Det. Mason Woessner conducted surveillance of the
18   previously identified suspected   stash house located and 4401 Hughes Ln. #56, and observed
19   MAGALLANES behind the wheel of   his Tacoma backed into the drive way under the covered
20   patio of the trailer. Also during this time period, SA Grimm conducted multiple surveillances and
21   observed that in the late night and early morning hours MAGALLANES' Tacoma truck and the
22   light blue Acura   with   a paper plate and no current known registration were located at 5611
23   Summer Solstice.

24        9.   In late January of 2015, Det. Anderberg observed MAGALLANES and LASCANO
25   Jr.   at 4215 Teal St Apt E21, Bakersfield, CA.   MAGALLANES was operating his Tacoma truck
26   and LASCANO Jr. was operating the silver Kia.   Investigation has identified 4215 Teal St Apt

27
4

28

1   E21 as the primary residence of LASCANO Jr. as it is the address listed on LASCANO Jr.'s

2   California state ID, as well as the address that Detectives from the Bakersfield Police

3   Department have observed LASCANO Jr. frequenting during the course of their investigation.

4          10. On February 4, 2015, Det. Anderberg and SA Grimm met with the CS at a

5   predetermined meet location and while under observation had the CS place a recorded phone

6   call to MAGALLANES. MAGALLANES indicated to the CS that he did not want to talk about

7   narcotics on his cellular phone, due to the fact that he is aware that law enforcement is watching

8   him. MAGALLANES requested the CS call him and meet face to face to place a narcotics order.

9   The CS placed a call and requested that MAGALLANES meet the CS at in the area of 3600

10  Rosedale Highway, a location previously agreed upon between the Agents and the CS.   Prior

11  to this phone call, SA Grimm conducted surveillance of MAGALLANES'S and SALCEDO'S

12  primary residence and observed that MAGLLANES's Tacoma and Acura were located in the

13  driveway and in front of the residence located at 5611 Summer Solstice. Investigation   indicated

14  that 5611 Summer Solstice is the primary residence utilized by Margarita SALCEDO. This has

15  been determined by the fact that the white Lexus driven by SALCEDO is registered in her name

16  to this address and SA Grimm has observed SALCEDO'S vehicle parked outside and inside

17  the garage of this residence. Database checks have also indicated that SALCEDO has financial

18  history at this address. Investigation has also indicated that 5611 Summer Solstice is the primary

19  residence of MAGALLANES. This determination is based on SA Grimm's observations of

20  MAGALLANES as he exited and re-entered the above listed address on several occasions

21  during the above described recorded phone call with the CS. In addition, on February 4, 2015,

22  prior to the recorded phone call, DEA Agents and Bakersfield Detectives established

23  surveillance of this location, utilizing both ground units and aerial units and observed

24  MAGALLANES exit the residence of   5611 Summer Solstice along with his girlfriend Margarita

25  SALCEDO, and two small children and enter into the Tacoma. MAGALLANES was then kept

26  under constant surveillance during which time he was observed travelling to a school located

27

28

1   in the area of Vineland and Edison Highway in Bakersfield, CA where he dropped off both of

2   the children at the school.

3        11. Following the recorded telephone call on February 4, 2015 between MAGALLANES

4   and the CS, agents and detectives maintained a constant surveillance on MAGALLANES and

5   SALCEDO and observed them drive to the predetermined   area of 3600 Rosedale Highway

6   and meet with the CS. It should be noted that prior to this meeting, the CS was searched by

7   Det. Anderberg with negative results for contraband.  At this time SA Grimm gave Det,

8   Anderberg an amount of $4,000.00 in U.S. currency that Det. Anderberg then transferred to

9   the CS to make the purchase of crystal methamphetamine from MAGALLANES.  The CS was

10   instructed by Det. Anderberg to travel to the area of 3600 Rosedale highway and meet

11   MAGALLANES in order to place the methamphetamine order in person per MAGALLANES's

12   instructions. It should be noted that the CS was kept under constant surveillance during the

13   entire operation.  Shortly thereafter the CS met as directed with MAGALLANES, and after a

14   brief meeting, MAGALLANES and SALCEDO were observed leaving the area and followed by

15   surveillance to a residence located at 3412 Rancho Sierra Street, Bakersfield, CA 93306.  At

16   approximately 10:00 AM, surveillance units observed MAGLLANES and SALCEDO exit the

17   vehicle and walk up the drive way and into the front door of the residence. Surveillance units

18   observed parked in the driveway of this residence a light blue Toyota Scion with a California

19   license plate of 5SPK134 registered to an Angelica MAGALLANES with an address of 3412

20   Rancho Sierra St. Also present at the location was a tan colored Tahoe with paper plates.

21        12.  As agreed,  SA Grimm and Det. Anderberg met with the CS immediately after

22   the CS' meeting with MAGALLANES.   The CS advised that MAGALLANES indicated that he

23   would be returning to the area with the crystal methamphetamine narcotics in approximately

24   one hour.

25        13. At approximately 10:35 AM, surveillance units observed a silver Kia with a sunroof

26   that had been previously identified as being operated by MAGALANNES'S courier LASCANO

27

28

1   Jr. arrive at the location of 3412 Rancho Sierra St.   Surveillance units observed MAGALLANES

2   and SALCEDO exit the residence and MAGALLANES enter into the driver side of the Tacoma

3   and SALCEDO the passenger side. LASCANO Jr. was then observed exiting the passenger

4   side of the KIA and walking up to the driver side of the Tacoma. LASCANO Jr. was observed

5   standing in the driver side window of the Tacoma speaking with MAGALLANES for a short time

6   before returning to the driver seat of the KIA.

7       14.  At approximately 10:38 AM surveillance units observed both MAGLLANES and

8   SALCEDO in the Tacoma and LASCANO Jr. in the KIA leave together and proceed, in tandem,

9   directly back to the area of 3600 Rosedale Highway. During this time SA Grimm observed the

10  CS receive a phone call from MAGALLANES. The CS informed SA Grimm that during the call

11  MAGALLANES indicated that he, "had a guy there already in a black Camaro."

12      15.  At approximately 10:38 AM Surveillance units observed MAGALLANES,

13  SALCEDO, and LASCANO Jr. arrive in the area of 3600 Rosedale Highway. SA Grimm then

14  observed MAGALLANES and SALCEDO began circling the parking lot, in what appeared to

15  SA Grimm, based on his knowledge and experience to be an effort to conduct counter

16  surveillance. The surveillance units observed the silver KIA operated by LASCANO Jr. drive

17  to and park in a parking lot located near Johns Incredible Pizza, which was located in the general

18  area. At this time, MAGALLANES approached the CS in his Tacoma and made contact quickly

19  before driving off. The CS was then observed being contacted by LASCANO Jr. who spoke

20  with the CS for a short time period in the parking lot before walking up to the Johns Incredible

21  Pizza. At this time SA Grimm observed LASCANO Jr. and the CS walk away from the Johns

22  Incredible Pizza. It should be noted that at this time surveillance units continued to conduct

23  constant surveillance of MAGALLANES and SALCEDO who were followed directly back to 5611

24  Summer Solstice were they parked the Tacoma and entered into the residence.

25      16.  The CS was observed entering to the Kia with LASCANO Jr. and they were both

26  observed travelling to a nearby shell gas station located in the same parking lot. According to

27                                  7

28

1   the CS, the at this time the CS handed LASCANO Jr. $4000.00, and LASCANO Jr. stated

2   that he was going into the gas station to count the money. LASCANO Jr. exited his vehicle

3   and entered into the store. A short time later LASCANO Jr. was observed exiting the store and

4   entering his vehicle, at which time LASCANO Jr. exited the area. Det. ANDERBERG and SA

5   Grimm maintained constant surveillance on the CS until both SA Grimm and Det. Anderberg

6   met with the CS at a predetermined location. The CS was kept under surveillance at all times

7   and was subsequently searched by Det. Anderberg again, which met with negative results.    At

8   this time the CS presented SA Grimm with a brown plastic bag that contained two tubs of plastic

9   wrapped crystalline substance, which was later determined to be 521.2 gross grams of a

10  substance that presumptively tested positive for crystal methamphetamine.

11      17. The CS informed SA Grimm that while waiting in the parking lot MAGALLANES and

12  SALCEDO had approached the CS in the TACOMA and MAGALLANES informed the CS that

13  his "Guy" was close by and would be meeting the CS. The CS stated that MAGALLANES and

14  SALCEDO then exited the area. The CS stated that shortly thereafter LASCANO Jr.

15  approached the CS on foot. The CS stated that the CS entered into LASCANO Jr.'s Kia and

16  the CS travelled to a gas station with LASCANO Jr. who took possession of the $4000.00 U.S.

17  currency provided earlier to the CS by Det. Anderberg. The CS stated that LASCANO Jr.

18  entered into the gas station and after apparently counting the money returned to the KIA and

19  produced a brown plastic bag from his waistband that contained two tubs of plastic wrapped

20  crystalline substance, and gave it to the CS. The CS stated that LASCANO Jr then exited the

21  area. CS statements were corroborated by the surveillance conducted by law enforcement

22  which observed the events as accurately described by the CS and who kept the CS under

23  constant surveillance during the entire time of these events.

24      18.   Surveillance units maintained a constant observation of LASCANO Jr and observed

25  him return in the KIA to the residence located at 3412 Rancho Sierra St. arriving at

26  approximately 11:19 AM, wherein he entered into the front door of the residence. At

27

28

1     approximately 11:20 AM LASCANO Jr was observed exiting the residence and entering into

2     the silver KIA. LASCANO Jr was then followed to his primary residence located at 4215 Teal

3     St. Apt E21, Bakersfield, CA.   LASCANO Jr. arrived at this location at approximately 11:45 AM.

4         19.   At approximately 11:32 AM.,   MAGALLANES was observed exiting 5611 Summer

5     Solstice by himself and entering into the Tacoma, which he was then observed driving to 4215

6     Teal St arriving at approximately 11:44 AM. It should be noted that MAGALLANES arrived

7     immediately before LASCANO Jr.   Surveillance units then observed LASCANO Jr. arrive at this

8     location and exit his vehicle and enter into the passenger side of the Tacoma and exit again

9     at approximately11:46AM., returning to his vehicle. At this time surveillance was terminated.

10                        III.

11                  **CONCLUSION**

12     20.   Based on the foregoing, I believe there is probable cause Guillermo MAGALLANES

13     Juan LASCANO Jr., and Margarita SALCEDO, knowingly and intentionally conspired to

14     distribute and to possess with intent to distribute crystal methamphetamine and, a Schedule

15     I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

16        Your affiant swears that the facts presented are true and accurate to the best of my

17     knowledge.

18

19

20                       Christopher M. Grimm
                         Special Agent

21                       Drug Enforcement Administration

22

23     SWORN AND SUBSCRIBED TO BEFORE ME
       THIS _11_ DAY OF FEBRUARY, 2015

24

25

26     JENNIFER L. THURSTON
       UNITED STATES MAGISTRATE JUDGE

27                         9

28

1    EASTERN DISTRICT OF CALIFORNIA

2    Approved as to form and substance by

3    _____ /S/ Brian K. Delaney _____

4    AUSA BRIAN K. DELANEY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10